# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 07-20176
    Hon. Lawrence P. Zatkoff

LIONEL HICKS,

    Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 12, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the government's allegations that Defendant has violated the conditions of his supervised release. Following a May 25, 2010, evidentiary hearing, the Court ordered Defendant to identify and brief all defenses to the government's allegations, and the government was permitted to respond to Defendant's brief. Defendant timely filed his brief [dkt 28], and the government timely filed its response [dkt 30]. Defendant has also filed a supplemental brief [dkt 31], and the Court has considered the arguments presented therein. Having considered all of the evidence presented, and having reviewed the parties' submissions, the Court finds that the issues are adequately presented in the parties' papers such that the decision process would not be significantly aided by additional oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the Court resolve this matter on the record and briefs submitted. For the following reasons, the Court finds that Defendant has VIOLATED the conditions of his

supervised release.

## II. BACKGROUND

On June 6, 2007, Defendant was indicted on one count of manufacturing marijuana, 21 U.S.C. § 841(a)(1), and aiding and abetting others in the commission of that offense, 18 U.S.C. § 2, and one count of possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), and aiding and abetting others in the commission of that offense, 18 U.S.C. § 2. On August 23, 2007, Defendant entered into a Rule 11 plea agreement whereby he pleaded guilty to Count I of the indictment, and the government agreed to dismiss Count II of the indictment. At his November 26, 2007, sentencing hearing, Defendant was sentenced to 37 months of imprisonment, which represented the low end of the agreed-upon Sentencing Guidelines range of 37-46 months. Defendant was also sentenced to three years of supervised release.

Following his term of imprisonment, Defendant's supervised release commenced on February 19, 2010. On April 9, 2010, the United States Probation Office alerted the Court that Defendant had been arrested two days prior in Novi, Michigan, because marijuana was discovered in his vehicle during a traffic stop. According to the police report[1], three baggies of marijuana were found in the trunk of Defendant's vehicle, totaling 91 grams (in baggies of 40.5 grams, 40.3 grams, and 10.2 grams), along with a 1-liter bottle of "Voodoo Juice," a substance purportedly used in the cultivation of marijuana. Defendant was also in possession of $2,270 in cash. In addition, Defendant's passenger, DeAngelo Butts ("Butts") had approximately 40.4 grams of marijuana on

---

[1] In his supplemental brief, Defendant contends that the toxicology report recorded only a total of 57.8 grams of usable marijuana, and he objects to the police report and live testimony suggesting a larger amount of marijuana was attributable to him. As discussed *infra*, however, it is illegal under federal law to possess marijuana in *any* amount so this difference is immaterial. Defendant has not otherwise objected to the accuracy of the police report.

his person.

Believing that this arrest, and the underlying activity, violated the conditions of Defendant's supervised release, the Probation Office petitioned the Court to issue an arrest warrant based on alleged violations of the following conditions:

> 1. The Defendant shall not commit another federal, state or local crime and shall not illegally possess a controlled substance.
>
> 2. The Defendant shall not unlawfully possess a controlled substance. The Defendant shall refrain from any unlawful use of a controlled substance.
>
> 3. The Defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the Probation Office.

The Court issued a warrant for Defendant's arrest, which was executed on April 23, 2010. The Court convened an evidentiary hearing on May 25, 2010, at which United States Probation Officer David Smith testified on behalf of the government. Defendant declined to testify at the hearing. The Court also entertained oral argument from both parties. Following the hearing, the Court ordered Defendant to identify and brief each and every defense that he was presenting to rebut the government's allegations, and the government was permitted to respond. The Court has reviewed all of the submissions and evidence and is prepared to render its decision.

### III. LEGAL STANDARD

The Court may revoke a criminal defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" 18 U.S.C. § 3583(e)(3). "The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial, i.e., guilt beyond a reasonable doubt." *United States v. Thompson*, 314 Fed. Appx. 797, 799

(6th Cir. 2008).

## IV. ANALYSIS

Defendant maintains that his possession of marijuana did not violate his supervised release because he possessed a lawful amount of the substance for medical purposes under the Michigan Medical Marihuana Act ("MMMA"), Mich. Comp. Laws § 333.26421 *et seq*. The government insists that possession of marijuana remains illegal under federal law regardless of state laws that legalize it for medicinal purposes.

### A. The Michigan Medical Marihuana Act

In the November 2008 election, Michigan voters approved an initiative to allow physcians to prescribe marijuana for the treatment of certain medical conditions. As codified, the MMMA allows a "qualifying patient" who has been issued a "registry identification card" to possess up to 2.5 ounces of marijuana for medical purposes. § 333.26424(a). A qualifying patient is "a person who has been diagnosed by a physician as having a debilitating medical condition." § 333.26423(h). *See also* § 333.26423(a) (enumerating qualifying "debilitating medical conditions"). A qualifying patient may designate one primary caregiver "to assist with [the] patient's medical use of marihuana," who must also obtain a registry identification card to legally possess marijuana. §§ 333.26423(g), 333.26424(b). A qualifying patient, or his or her registered primary caregiver, may also cultivate up to 12 marijuana plants for that patient's care. § 333.26424(a). A primary caregiver may be registered for up to five qualifying patients, and he or she may possess up to 2.5 ounces of marijuana and 12 cultivated marijuana plants for each qualifying patient. §§ 333.26424(b), 333.26426(d).

At the evidentiary hearing, the Court received in evidence a "Physician Certification" dated

March 30, 2010, which diagnoses Defendant with "severe and chronic pain" and recommends that marijuana would be "palliative or provide medical benefits" for his symptoms. *See* Gov.'s Ex. 3. Also presented was Defendant's "Application Form for Registry Identification Card," also dated on March 30, 2010. *See* Def.'s Ex. 2. Similar paperwork was submitted to show that Butts had also applied for a registry identification card, although his documents were dated April 13, 2010 (*i.e.*, six days *after* the traffic stop).[2] While Defendant has not been issued a registry identification card in response to his application, the MMMA provides that a valid application is deemed granted if the department does not issue a registry identification card within 20 days of receiving the application, and the application itself is valid proof of registration. *See* § 333.26429(b).

## B. Federal Regulation of Marijuana

### 1. Controlled Substances Act

Under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, marijuana is categorized as a Schedule I substance, s*ee* 21 U.S.C. § 812(c), Schedule I(c)(10), which indicates, *inter alia*, that "Congress expressly found that the drug has no acceptable medical uses." *Gonzales v. Raich*, 545 U.S. 1, 27 (2005). The CSA prohibits the possession of Schedule I substances, except for in the use of government-approved research projects. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 490 (2001); *see also* 21 U.S.C. §§ 823(f), 844(a).

It is indisputable that state medical-marijuana laws do not, and cannot, supercede federal laws that criminalize the possession of marijuana. *See Gonzales*, 545 U.S. at 29 ("The Supremacy

---

[2]According to Defendant, when the legality of marijuana possession is challenged, the date on the application is immaterial so long as the applicant is registered under the MMMA by the time he or she is required to prove registration (*i.e.*, at a court proceeding). The Court will defer this issue to the state authorities because its resolution does not affect this proceeding.

5

Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."); *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 945 (9th Cir. 2010) ("The federal government has not recognized a legitimate medical use for marijuana, however, and there is no exception for medical marijuana distribution or possession under the federal Controlled Substances Act[.]"); *United States v. Scarmazzo*, 554 F. Supp. 2d 1102, 1109 (E.D. Cal. 2008) ("Federal law prohibiting the sale of marijuana is valid, despite any state law suggesting medical necessity for marijuana"); *United States v. Landa*, 281 F. Supp. 2d 1139, 1145 (N.D. Cal. 2003) ("[O]ur Congress has flatly outlawed marijuana in this country, nationwide, including for medicinal purposes.").

And if federal law and precedent were not clear enough, the MMMA specifically acknowledges that it does not supercede or alter federal law. *See* § 333.26422(c) ("*Although federal law currently prohibits any use of marihuana except under very limited circumstances*, states are not required to enforce federal law or prosecute people for engaging in activities prohibited by federal law.") (emphasis added).

Thus, the MMMA has no effect on federal law, and the possession of marijuana remains illegal under federal law, even if it is possessed for medicinal purposes in accordance with state law. *See, e.g.*, *Gonzales*, 545 U.S. at 27 ("The CSA designates marijuana as contraband for any purpose[.]").

**2. Non-Prosecution for Possession of Medical Marijuana**

Defendant also contends that the Court should not find him in violation because the federal government would not prosecute him for possessing medical marijuana. In support of this position, Defendant relies on statements made by Attorney General Eric Holder, and he has also attached as

6

an exhibit to his brief a memorandum authored by Deputy Attorney General David Ogden that provides guidance to federal prosecutors in enforcing federal drug laws against users of medical marijuana.

The Department of Justice's discretionary decision to direct its resources elsewhere does not mean that the federal government now lacks the power to prosecute those who possess marijuana. *See United States v. Stacy*, __ F. Supp. 2d ___, No. 09cr3695 BTM, 2010 WL 744354, at *7 (S.D. Cal. Mar. 2, 2010) ("Defendant has not pointed to any authority for dismissing an indictment because it is contrary to internal Department of Justice guidelines."). Furthermore, Attorney General Holder's and Deputy Attorney General Ogden's statements cannot be construed as affirmatively representing to Defendant that he is now authorized to possess or use marijuana under federal law. A federal district court recently rejected a similar argument based on such representations:

> Even if [President Barack] Obama's and Holder's statements can be viewed as establishing a general policy against prosecuting marijuana dispensaries operating legally under state law, a reasonable person would not rely on these statements as an assurance that he or she would not be prosecuted under federal law.

*Stacy*, 2010 WL 744354, at *5.

Moreover, even if the above statements somehow provide a defense to a prosecution for possession of medical marijuana, which they do not, this is not a prosecution for possession of marijuana. Instead, it is a prosecution for alleged violations of Defendant's supervised-release conditions, which the above policies and statements do not address.

Defendant's prediction that "[s]ome day federal law will change[,]" is conjectural and a non-factor in this Court's decision. The CSA authorizes the Attorney General to modify the drug schedules as necessary. *See* 21 U.S.C. § 811(a). As of this writing, the Attorney General has not

transferred or removed marijuana from Schedule I. As such, marijuana continues to be a Schedule I drug, and its possession remains illegal under federal law. *See Olsen v. Holder*, 610 F. Supp. 2d 985 (S.D. Iowa 2009) (rejecting challenge that marijuana is improperly listed as a Category I controlled substance because it has accepted medical uses). This Court is obligated to follow the laws of the United States, including the CSA and its drug classifications, in their present form, and in doing so, it cannot speculate regarding future, hypothetical revisions to those laws.

In sum, the Court concludes that the Department of Justice's stance on medicial-marijuana prosecution does not prevent the government from bringing this prosecution, nor does it prevent the Court from determining whether Defendant has violated conditions of his supervised release.

## C. Application

Despite the controversy, whether legitimate or contrived, regarding the effects of state medical-marijuana laws on federal law, the question presently before the Court is whether Defendant's possession of marijuana, even if for medicinal purposes, violated the conditions of his supervised release.

In *United States v. Lafley*, No. CR 00-19-H-DMW, 2010 WL 1741509 (D. Mont. Apr. 28, 2010), the court found that a defendant violated his supervised release under comparable circumstances:

> Under federal law, marijuana is a controlled substance. While Montana law permits marijuana to be prescribed, federal law does not. Thus, it is still a violation of federal law to possess or use marijuana, even with a state sanctioned prescription. The Montana Supreme Court has recognized this fact. Accordingly, Lafley's medical marijuana card does not entitle him to disregard federal law, or otherwise not conform with the terms of his supervised release.

*Id*. at *2 (citations omitted). The Court fully agrees with that well-stated reasoning.

8

The Court also notes that when it imposed the conditions of Defendant's supervised release at the November 15, 2007, sentencing hearing and in its November 27, 2007, judgment, the MMMA had not been voted upon or enacted, and the possession of marijuana was illegal under state law as well as federal law. A similar scenario was present in *United States v. Freel*, __ F. Supp. 2d ___, No. 06-25-P-H, 2010 WL 1222092 (D. Me. Mar. 29, 2010), where the use of medical marijuana was approved in the State of Maine after the defendant had been sentenced. *Id.* at *1. ("Obviously, then, in sentencing Friel, I did not envision his having the ability to use marijuana while on supervised release."). The defendant moved to clarify his conditions of supervised release, arguing that he should be allowed to use medical marijuana while on supervised release when prescribed by a physician. The court declined to approve the request, finding that the defendant was not "an appropriate candidate for using marijuana while under supervision, even if it is legal" because one of the defendant's underlying convictions was for drug trafficking. *Id.* at *1–2.

Likewise, Defendant pleaded guilty to the manufacture of over 1,000 marijuana plants and aiding and abetting others in that offense. Had Defendant requested permission or clarification from the Court on his ability to use medical marijuana while on supervised release, the Court would have denied him such permission based on his history of manufacturing massive amounts of marijuana. *See id.* at *2 ("Thus, even if marijuana could now legally be used for medicinal purposes, I would not permit Friel to use it in light of the drug trafficking risk he poses.").

However, unlike the defendant in *Friel*, Defendant did not petition the Court for clarification or modification of his conditions of supervised release. The record instead indicates that he inquired of his probation officer, but he was informed that the Court's permission was required to modify his supervised release. Rather than seeking further clarification or permission, Defendant unilaterally

9

made the improvident decision to possess marijuana, apparently assuming that such possession complied with his supervised release. To the extent that Defendant suggests that the Probation Office should have provided clearer guidance, it is Defendant's duty, and not that of the Probation Office, to ensure that his behavior and activities comport with the conditions of his supervised release.

Finally, the Court reminds Defendant that even if possessing medical marijuana was legal under federal law, which it is not, a court may restrict the otherwise legal behavior of a defendant on supervised release. In *Friel*, the court noted that "it is not uncommon for people on supervised release to be restricted from activities that are legal for the rest of the population. For example, Friel is prohibited from using alcohol or any intoxicant; and he is prohibited from possessing firearms, things that law-abiding citizens are entitled to do." *Id*. at *2; *see also United States v. Pai*, 187 Fed. Appx. 719, 721 (9th Cir. 2006) (affirming district court's imposition of supervised release condition that "Pai be precluded from using controlled substances, including medical marijuana"). A sentencing court may therefore prohibit the possession of marijuana as a condition of supervised release even if such possession is permitted under state law, and even if such possession one day becomes legal under federal law. That is, Defendant has no right to use marijuana while on supervised release, even if its use was otherwise legal.

## D. Other Objections

Although the Court required Defendant to identify each and every defense, Defendant has generally relied upon his argument that his possession of marijuana was legal under the MMMA. He has, however, suggested that Officer Smith's recitation of the police report pertaining to the facts and circumstances of Defendant's arrest and the amount of marijuana seized violated the

Confrontation Clause of the Sixth Amendment.

"[R]evocation hearings are more flexible than a criminal trial." *United States v. Stephenson*, 928 F.3d 728, 732 (6th Cir. 1991). Even assuming that such statements were testimonial as contemplated by *Crawford v. Washington*, 541 U.S. 36 (2004), this circuit has specifically held that the Confrontation Clause is inapplicable to hearings involving the revocation of supervised release. *See United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005). Likewise, the Court may consider hearsay at a revocation hearing if such evidence is proven to be reliable. *See Stephenson*, 928 F.2d at 732.

The Court finds that Officer Smith's testimony was reliable and sufficient to establish that Defendant was in possession of marijuana, particularly because Defendant has not contested this. Rather, he maintains that such possession did not violate the terms of his supervised release. The lack of corroborating testimony or cross examination regarding the amount of marijuana stated in the report is harmless because the possession of *any* amount of marijuana is illegal under federal law and violative of the conditions of supervised release. *See United States v. Williams*, 333 Fed. Appx. 63, 71 (6th Cir. 2009) ("The unlawful use of even a small amount of a controlled substance would have constituted a violation [of supervised release]."). Even if the Court accepts that Defendant possessed a lesser amount of marijuana than was stated, as he asserts in his supplemental brief, it would have no bearing on the Court's conclusion.

In a related vein, the Court finds no reason to postpone its decision pending the resolution of the state-court possession charge. As discussed above, by possessing marijuana, Defendant acted contrary to federal law and, therefore, the conditions of his supervised release, regardless of whether he complied with state law. A favorable verdict in state court would not compel a finding to the

contrary.

Finally, Defendant originally requested that he be permitted to file supplemental briefing after reviewing the transcripts from the evidentiary hearing. He has since filed one supplemental brief, and the Court has considered that submission. The Court finds that further supplemental briefing or review of the transcripts is unnecessary to decide the purely legal question of whether Defendant's possession of marijuana—which, again, is uncontested—violated federal law, and correspondingly, violated his supervised-release conditions.

**E. Findings and Conclusion**

In reaching its decision, the Court has considered the testimony of Officer Smith, which it credits. It also has considered the police report, which adequately details the officers' encounter with Defendant and their observation that marijuana was present in Defendant's vehicle and on his passenger's person. The Court has also considered all oral argument and briefing submitted by counsel.

The Court finds that the government has proven the following facts by a preponderance of the evidence, and that Defendant does not contest these facts:

(1) That on April 7, 2010, Novi police officers stopped Defendant for a traffic violation;

(2) That marijuana was found in the trunk of Defendant's vehicle;

(3) That marijuana was found on the person of Defendant's passenger, DeAngelo Butts;

(4) That Defendant was arrested for possession of marijuana; and

(5) That the substance found both in Defendant's vehicle and on Butts's person was, in fact, marijuana.

Based on these facts, and all of the evidence on the record, the Court concludes that:

(1) The possession of marijuana is illegal under federal law, and state laws permitting the

use of medical marijuana do not affect the illegality of marijuana under federal law.

(2) By possessing marijuana, a Schedule I controlled substance, whether for medicinal purposes or otherwise, Defendant committed a federal crime, regardless if he was, or will be, prosecuted for that crime under federal law. Such possession violated the following conditions of his supervised release:

>1. While on supervised release, the Defendant shall not commit another federal, state or local crime and shall not illegally possess a controlled substance.
>
>2. The Defendant shall not unlawfully possess a controlled substance. The Defendant shall refrain from any unlawful use of a controlled substance.

(3) Passenger DeAngelo Butts's possession of marijuana, whether for medicinal purposes or otherwise, constituted criminal activity under federal law. Defendant's association with Butts, therefore, violated the following condition of his supervised release:

>3. The Defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the Probation Office.

## V. CONCLUSION

Accordingly, and for the above reasons, the Court finds that Defendant has VIOLATED the conditions of his supervised release. The Court will schedule a date for sentencing.

IT IS SO ORDERED.

>S/Lawrence P. Zatkoff
>LAWRENCE P. ZATKOFF
>UNITED STATES DISTRICT JUDGE

Dated: July 12, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 12, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290